# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2323 | **DATE** | 8/11/04 |
| **CASE TITLE** | NSB Technology vs. Specialty Direct Marketing | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]. Memorandum Opinion and Order Entered. The Court denies NSB's motion for declaratory judgment via partial summary judgment on the issue of the disputed boundary clause contained in the June, 1990 agreement. *AK*

(11) X [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| x | Notified counsel by telephone. | | AUG 12 2004 | 93 |
| X | Docketing to mail notices. | | date docketed | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK 2004 AUG 11 PM 2:29 | date mailed notice | |
| AC | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

```
            UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF ILLINOIS          DOCKETED
                  EASTERN DIVISION
                                                  AUG 1 2 2004
```

NSB TECHNOLOGIES, INC., )
d/b/a HHC DIRECT, )
)
        Plaintiff, )
)
v. )   Case No. 03 C 2323
)
SPECIALTY DIRECT MARKETING, )   Magistrate Judge Arlander Keys
INC., )
)
        Defendant. )

### MEMORANDUM OPINION AND ORDER

NSB Technologies, Inc. engages in the bank account retention business, and it does so under the name HHC Direct. As part of its business, NSB developed trade secret information and marketing and advertising materials, which it provided to Specialty Direct Marketing ("SDM") under the terms of a letter agreement signed June 18, 1990 by Peter Higgins, President of HHC Direct, and C. David Wallace, President of SDM (hereinafter, "the Agreement").

In the Agreement, HHC agreed to provide SDM with its "Term Deposit Account Maturity Notice/Retention Program," plus "copy for the program's letters, telemarketing cards and branch implementation guides; plus proposal information, reports concerning the program, details for the computer program that drives the output, and printed samples for existing programs."



Agreement, ¶¶2-3.[1] HHC also agreed to keep SDM current on its marketing efforts and to provide ongoing program updates. *Id.*, ¶4. In exchange, SDM agreed to pay HHC $3,000 up front, $3,000 when it signed its first client, and $.10 per account for the first five years of the Agreement; thereafter, SDM agreed to pay a "mutually agreeable" royalty. *Id.*, ¶7. Further, under the Agreement, HHC and SDM agreed to share marketing and program information "for as long as it is mutually useful and agreeable," and they agreed to split the country in terms of business opportunities; HHC agreed that, for a period of fifty years, it would not market the program east of the Mississippi River, and SDM agreed that, during the same period, it would not market the program west of the Mississippi River. *Id.*, ¶¶5-6. The Agreement provided that, if either party did business in violation of the territory clause, "all revenue goes to the company in whose territory the client is." *Id.*, ¶5. It also provided that "[u]pon payment of the fee, the east coast program is the property of SDM to handle as SDM chooses while, of course, honoring the royalty and territory agreements." *Id.*, ¶7.

---

[1] A copy of the Agreement is attached to HHC's Complaint and as Exhibit 1 to the Declaration of Steele N. Gillaspey in support of NSB's motion for partial summary judgment. The Agreement itself is a one-page document, consisting of eight separate, but unnumbered paragraphs, plus signature lines. For ease of reference, the Court refers to the paragraphs by number, even though no numbers appear in the document.

On April 4, 2003, NSB sued SDM for copyright infringement, alleging that SDM had taken HHC's intellectual property and evolved it into works "used for SDM's sole and exclusive benefit, in contravention of the law." Complaint, ¶20. HHC also sued for concealment, for violation of the Illinois Trade Secrets Act, for an injunction and for a declaratory judgment that HHC is no longer bound by the territory provision in the Agreement. On May 14, 2004, NSB filed a motion seeking "declaratory relief via partial summary judgment" on this last claim; NSB asks the Court to declare that, because SDM failed to pay royalties in accordance with the Agreement, NSB is no longer contractually obligated to limit its business operations to the area west of the Mississippi River.

Along with its motion, NSB submitted what it purports to be a statement of undisputed facts. The statement consists of a chart, listing eleven "facts," most of which are really legal conclusions. For example, NSB lists as "facts" that "[t]he Agreement . . . was a license agreement and NSB performed," Statement of Undisputed Facts, ¶1; that "[t]he license was breached by [SDM's] failure to pay royalites to NSB," id., ¶2; that "[t]he breach by [SDM] was material and terminated NSB's return obligations, including maintaining the boundary," id., ¶3; that SDM "expressly and voluntarily agreed that NSB owed no further obligations to [SDM] under the license," id., ¶5; and

3

that SDM "expressly and voluntarily waived any obligations owed by NSB under the license," id., ¶6. All of these are legal conclusions, not statements of fact. And none is properly considered under Local Rule 56.1.

Additionally, some of the statements of fact are not supported in the record. For example, NSB states that SDM "has admitted that the boundary is of no force or effect." Statement of Undisputed Facts, ¶8. And to support this statement, it cites SDM's Answer to the Complaint, and NSB's responses to a set of requests for admission served by SDM. But, in fact, SDM's answer does not admit that the territory provision is void; rather, because of the way the allegation in the Complaint is written, the answer merely admits that NSB *asserts* that this was the case. See Complaint, ¶43 ("HHC asserts that the subject matter agreement is null and void, and of no force or effect as to boundaries, based, inter alia, on the fact that SDM has not complied with the provisions of the agreement, namely payment of royalties due in a sum or sums to HHC potentially exceeding $2,000,000.00."); Answer, ¶43 ("Defendant upon information [and] belief represents that the allegations of paragraph 43 are true."). Similarly, the requests to admit and NSB's responses thereto establish only that NSB believes the Agreement to have been terminated; they say nothing explicit about SDM's position on the issue.

Similarly, contrary to NSB's assertion, the exchange of letters between the parties' attorneys (attached as Exhibits 2 and 3 to Gillaspey's Declaration) are insufficient to establish the termination of all rights and duties. Although that is one possible interpretation of the letters, the letter purportedly stating SDM's position is unsigned and conveys only an attorney's understanding that "my client accepts HHC's position set forth in your letter of September 11 regarding that agreement"; the letter does not say that SDM (which is not even mentioned by name) agrees that NSB is no longer obliged to abide by the territory provision. This is hardly the smoking gun NSB makes it out to be, and it is hardly the type of document on which the Court should base a summary judgment.

Along similar lines, some of NSB's statement of facts are supported only with conclusory representations by NSB's witnesses. Donn Harms, a registered patent attorney, makes various assertions concerning the nature and scope of the Agreement, seemingly without any personal knowledge about the parties' understanding or interpretation of the various provisions; and Donald Yager, a former HHC employee, makes various representations about the Agreement, while at the same time admitting that he "was not made privy to the details" thereof. Declaration of Donald G. Yager, ¶7. None of this is

proper under Local Rule 56.1.[2]

"The interpretation or legal effect of a contract is a question of law to be determined by the court." *Cromees, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 394 (7th Cir. 2003)(citing *Bowers Manufacturing Co., Inc. v. Chicago Machine Tool Co.*, 117 Ill. App. 3d 226, 453 N.E.2d 61, 66 (1983)). So too the determination of whether a contract is ambiguous. *Id.* NSB cannot short circuit the process of resolving its claims by submitting conclusory declarations from witnesses testifying to what the Court must determine after a thorough review of the record. And, on the record now before it, the Court simply cannot agree with the conclusions NSB provides. At a minimum, issues remain concerning the interplay between the 5-year royalty provision and the 50-year territory provision – in particular, whether the Agreement required SDM to pay royalties after 1995, whether SDM breached its obligations under the Agreement's royalty provisions, and whether, if it did, that breach would have freed NSB from its obligation to honor the territory provision.

## Conclusion

For the reasons explained above, the Court denies NSB's motion for declaratory judgment via partial summary judgment on

---

[2] Of course, SDM, which failed to file any statement of facts, is no better in its efforts to comply with the Court's local rules.

the issue of the disputed boundary clause contained in the June 1990 Agreement.

Dated: August 11, 2004

ENTER:

_____
ARLANDER KEYS
United States Magistrate Judge