# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 2323 | DATE | 8/17/2004 |
| CASE TITLE | NSB Technologies vs. Specialty Direct Marketing | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

## DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Memorandum Opinion and Order entered. Plaintiff's Motion to Dismiss/Strike Defendant's Counterclaim [#74] is hereby **granted**. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices |
| | No notices required. | | |
| | Notices mailed by judge's staff. | | AUG 20 2004 date docketed |
| | Notified counsel by telephone. | | |
| X | Docketing to mail notices. | | docketing deputy initials |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | 8/17/2004 date mailed notice |
| FT/ *sely* | courtroom deputy's initials | 2004 AUG 19 AM 11:51 U.S. DISTRICT COURT CLERK Date/time received in central Clerk's Office | FT mailing deputy initials |

Document Number 95

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

NSB TECHNOLOGIES, INC.,       )
a California corporation d/b/a )
HHC DIRECT,                   )   NO. 03 CV 2323
                              )
       Plaintiff              )
                              )
vs.                           )   Magistrate Judge
                              )   Arlander Keys
                              )
SPECIALTY DIRECT              )        AUG 2 0 2004
MARKETING, INC.,              )
a Virginia corporation,       )
                              )
       Defendant.             )

## MEMORANDUM OPINION AND ORDER

In the present case, Plaintiffs, NSB Technologies, Inc. ("NSB"), and its principal, Peter Higgins, have filed a Motion to Dismiss/Strike Defendant Specialty Direct Marketing's ("SDM") Counterclaim, which alleges corporate defamation and third party defamation. The plaintiffs argue that SDM's Counterclaim should be dismissed because, among other reasons, California's litigation privilege is an absolute bar to the defamation claims SDM has alleged. For the reasons set forth below, the Court grants the plaintiffs' motion.

### FACTS

NSB and SDM are in the bank account retention business. In 1987, NSB developed Retentionplus®, a specially designed computer program for use in the banking industry. *See* Complaint ¶¶ 24-25. On June 18, 1990, NSB and SDM entered into an agreement, which

allowed SDM to use Retentionplus® in exchange for royalty payments. *See* Complaint ¶¶ 26-27. This agreement continued until late 1999, when SDM informed NSB that it was leaving the bank account retention business and would no longer require NSB's software. *See* Complaint ¶ 35. In December 2002, NSB became aware that SDM was still in business, and continued to use Retentionplus, ® without paying royalties to NSB. *See* Complaint ¶ 37. As a result, NSB filed a lawsuit against SDM alleging, *inter alia,* copyright infringement.

While engaged in discovery for the copyright infringement lawsuit, SDM's attorneys sought access to Mr. Higgins' computer. *See* Counterclaim and Third Party Complaint ¶ 12. This Court ordered the parties to proceed with the inspection. When SDM's attorneys arrived to inspect the computers, Mr. Higgins proclaimed, "I will not allow access to my computer files prior to 1995. That f---ing thief [referring to Mr. Wallace] stole my computer programs!" *See* Counterclaim and Third Party Complaint ¶ 14. SDM alleges that Mr. Higgins's statements were "per se false and directed only for scandal, and malicious injury to Mr. Wallace's personal emotions, SDM's and Mr. Wallace's business reputations," and, as a result, SDM and Mr. Wallace are entitled to recompense pursuant to California substantive law. *See* Counterclaim and Third Party Complaint ¶ ¶15-16.

**LEGAL STANDARDS**

"A motion to dismiss under Rule 12 (b) (6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). The court accepts all well pleaded facts as true, and draws all reasonable inferences in favor of Plaintiff. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 977-78 (7th Cir. 1999). Dismissal is appropriate only if Plaintiff can prove no set of facts in support of a legally cognizable claim. *Lee v. City of Chicago*, 330 F. 3d 456, 459 (7th Cir. 2003).

**Discussion**

**A. NSB's Motion to Dismiss Was Timely Filed**

SDM first argues that this Court should strike NSB's Motion to Dismiss because it was not timely filed. *See* Response to NSB Motion to Dismiss ¶ 1. SDM notes that Rule 12 provides, "the plaintiff shall serve a reply to a counterclaim in the answer within 20 days after service of the answer, or, if a reply is ordered by the court, within 20 days after service of the order, unless the order otherwise directs." Fed. R. Civ. P 12 (a) SDM served its Counter Claim and Third Party Complaint on NSB on May 7, 2004, and contends that a response was due on May 28, 2004. *See* Response to Motion to Dismiss ¶ 1. Therefore, SDM argues, NSB's response, filed on June 1, 2004, was untimely.

Although SDM is correct that the Federal Rules of Civil

3

Procedure require a party to respond to a complaint within 20 days, the Rules extend the time for filing when service is made by mail, and when the filing date falls on a weekend or holiday. Fed. R. Civ. P. 6 (e).

Federal Rule of Civil Procedure 6 provides that, whenever a party is required to take action in a set period after service of notice is made by mail, three days are added to the set period. Fed. R. Civ. P. 6 (e). Because the parties do not dispute that SDM served NSB via U.S. mail, the filing date was extended by three days, making NSB's answer due on May 30, 2004. A glance at the calendar reveals that May 30, 2004 was a Sunday, and that the next day, May 31, 2004, was Memorial Day- a federally recognized holiday. When the filing date falls on a weekend or holiday, the Federal Rules extend the time for filing. Rule 6 provides that, "in computing any period of time . . . the last day of the period so computed shall be included, unless it is a Saturday, Sunday, or a legal holiday . . . in which event the period runs until the end of the next day which is not one of the aforementioned days." Fed. R. Civ. P. 6 (e). Therefore, because Rule 6 recognizes Memorial Day, May 31, 2004, as a legal holiday, NSB's Motion to Dismiss, filed the next day, on June 1, 2004, was timely.

**B. SDM's Defamation Counterclaim is Barred**

Next, NSB seeks dismissal of SDM's defamation counterclaim

4

based upon California's litigation privilege. NSB argues that, because Mr. Higgins' allegedly defamatory statement was made while the parties were engaged in depositions and a Rule 34 entry and inspection process for NSB's copyright infringement lawsuit, California's litigation privilege provides an absolute bar against a derivative defamation lawsuit. *See* Motion to Dismiss pgs 2-3.

SDM counters that NSB's decision to rely upon California's litigation privilege is poorly reasoned. SDM asserts that, although California substantive law applies with respect to the defamation claims, privilege rules are evidentiary, and therefore procedural. *See* Response to Motion to Dismiss ¶ 5. SDM argues that, if NSB asserts a litigation privilege, federal law should determine whether the privilege doctrine applies.

In *Jaffe v. Redmond,* the United States Supreme Court ruled that, pursuant to Rule 501 of the Federal Rules of Evidence, federal – not state-- privilege law applies where there is a federal question presented. 528 U.S. 1, 6 (1996). Similarly, federal common law applies to supplemental claims in a lawsuit that includes a federal claim. *See* Advisory Committee Notes to FRE 501("federal law of privileges should be applied with respect to pendent state law claims when they arise in a Federal Question case.")

However, this holding does little to advance SDM's

5

position; regardless of whether state law or federal commonlaw applies, the litigation privilege bars SDM's defamation claim. *See generally Steffes v. Stepan* 144 F.3d 1070, 1074 (7th Cir. 1998). The Seventh Circuit explained that the content of federal common law is often borrowed from state law. *Steffes*, 144 F.3d at 1074; *see also Baravati v. Josephthal, Lyon, and Ross*, 28 F. 3d 704, 707 (7th Cir 1994) ( "defamation is an area of state law, and defamation privileges are an integral part of the law of defamation." )

In *Steffes,* an employee sued her former employer for discrimination. While her discrimination lawsuit was pending, her *former* employer called her *current* employer to inquire as to whether the plaintiff was actually working there. In doing so, the plaintiff's former employer revealed the existence of the plaintiff's discrimination claims, as well as the existence of certain medical restrictions, to the plaintiff's new employer. *Id.* at 1073. This phone call prompted the plaintiff's second action against her former employer, charging that the call constituted retaliation for having filed a discrimination claim. The district court dismissed the plaintiff's retaliation claim, because it found the employer's actions to be protected by an absolute privilege for attorney communications that are pertinent to litigation. *Id.* at 1074 (discussing the district court's dismissal of the plaintiff's retaliation charge).

The plaintiff appealed the dismissal of her retaliation claim, arguing that the district court erred in allowing a state privilege to bar her federal claim. 144 F. 3d at 1074 (noting that the district court relied upon Illinois cases and federal cases applying Illinois law in dismissing her case). The Seventh Circuit agreed that applying state law to defeat Plaintiff's federal claims would be inappropriate, but noted that the district court did not "explicitly announce that it was applying state law. . . it may in fact have been applying a federal privilege whose content is borrowed from state law." *Id.* "'A standard way in which federal courts make federal common law is by adopting the law of the state whose law would govern in the absence of federal law, subject to the implicit proviso that the adopted state law be consistent with federal policy.'" *Id.* at 1075 (quoting *Baravati,* 28 F.3d at 707.)[1]

The Seventh Circuit's decision in *Baravati* further illustrates the role state law plays in developing federal common law. 28 F.3d at 707 (a broker claimed that a securities firm's statements in a form submitted to the NASD were defamatory). The *Baravati* court noted that adopting state law

---

[1] The court concluded that there were "serious problems . . . with recognizing such a federal privilege in this case." 144 F.3d at 1075 (noting that the privilege applies to attorneys, witnesses, litigants, etc. and not typically a defendant's employees. In addition, recognizing the privilege in *Steffes* would undermine Title VII's and the ADA's remedial policies. *Id.* The court affirmed the dismissal on other grounds. *Id.* at 1077.

"minimize[s] the number of different legal rules to which people are subject" and takes advantage of the states' "richer bodies of common law." *Id.* at 707. Consequently, a court applying federal law, could end up applying state law after all. *Id.*

The *Jaffe* Court stated that "reason and experience" are "the touchstones for acceptance of a privilege under Rule 501". 518 U.S. at 6 (affirming this portion of the Seventh Circuit's decision). Both "reason and experience" favor adoption of federal common law litigation privilege in this case. Illinois and California[2], for example, adopted their respective litigation privileges to enable attorneys to represent their clients -- and clients to advance their own positions - zealously, without threat of civil liability. *See, e.g. Malevitis v. Friedman*, 753 N.E.2d 404, 406-07 (Ill. App. Ct. 2001). Notably, all fifty states recognize some form of the litigation privilege. T. Leigh Anenson, *Absolute Immunity From Civil Liability: Lessons For Litigation Lawyers*, 31 Pepp. L.Rev. 915, 927 (May 2004); *see also Jaffe*, 518 U.S. at 13 ("the existence of a consensus among the States indicates that 'reason and experience' support recognition of the privilege.")

---

[2] Illinois and California have embraced both §§ 586 and 587 of the Restatement (Second) of Torts, which protects parties, attorneys, and their assistants from defamation actions stemming from statements made during the course of a judicial proceeding. *See, e.g., Malevitis*, 753 N.E.2d at 406-07; *Kashian Harriman*, 98 Cal. App. 4th 892, 912 (Cal. Ct. App. 2002).

8

The Court finds that it is appropriate to recognize a federal litigation privilege in this case. The policy behind allowing such a litigation privilege is the same in federal courts as it is in California and Illinois; it provides litigants with unfettered access to courts, and the opportunity to fully litigate disputes, without fear of facing subsequent derivative tort actions. *Baravati,* 28 F.3d at 707, *Silberg v. Anderson,* 786 P.2d 365, 369-70 (Cal. 1990), *Malevitis,* 753 N.E.2d at 407 (Ill. App. Ct. 2001). And there is no dispute that the statements made here would satisfy the elements of the litigation privilege recognized by both California and Illinois' privilege laws. California and Illinois have virtually identical absolute litigation privileges[3], and both privileges are liberally interpreted in favor of their application. California provides absolute immunity from defamation claims for statements made in any judicial proceeding. Cal. Civ. C.§ 47. The privilege applies to any communication: "1) made in judicial or quasi judicial proceedings; 2) by litigants or other participants authorized by law; 3) to achieve the objects of the litigation; and 4) that have some connection or logical relation to the action." *Kashian v. Harriman,* 98 Cal. App. 4th 892, 912 (Cal. Ct. App. 2002) The privilege encompasses "any

---

[3] As such, the parties' dispute over which state's laws would apply, or would form the basis for shaping federal common law, is a difference without a distinction.

communication . . . having 'some relation' to a judicial proceeding." *Id.* at 913. (noting that the motive or intent for making the underlying statement is irrelevant).

Similarly, Illinois law protects parties from liability for defamatory statements made "during the course and as part of a judicial proceeding . . . if the matter has some relation to the proceeding." *Malevitis v. Friedman,* 753 N.E.2d at 406-407. Any doubt as to whether the statement was made during the course of a judicial proceeding is resolved in favor of finding that the matter is related. *Id.* at 407. Once the state court determines that the underlying statement is "related" to the litigation, there can be no defamation action regardless of the "motive or the unreasonableness of his conduct." *Id.*

Applying these same parameters to federal common law, the Court finds that SDM's defamation action is barred. In this case, the offending statement was made by a party during the course of a discovery inspection that was ordered by this Court. Mr. Higgins' intent or motive for making the statement is irrelevant; the statement was clearly related to the underlying copyright litigation and is, therefore, protected. Therefore, the Court grants NSB's Motion to Dismiss.

**CONCLUSION**

The Court finds that federal common law recognizes a litigation privilege barring the defamation claims stemming from statements, such as those made by Mr. Higgins, that are related to judicial proceedings. Accordingly, the Court grants the plaintiffs' Motion to Dismiss/Strike SDM's Counterclaim.

Dated: August 17, 2004

E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge